ELIZA HALL AND T. B. HALL, *Executors of* R. T. HALL *vs.* EDWARD W. BELT.—*June*, 1837.

A bond given to a sheriff by his deputy, the penalty of which was expressed to be, in " current money of the *United States*," is a valid and binding instrument, and a motion in arrest of judgment upon the ground that no such currency is known to the laws overruled.

Poundage fees due a sheriff, may, after the return of the writ be collected, as other officers' fees, under the act of 1779, ch. 25, and its supplement.

It is not necessary that officers' fees should be sent out for collection, in the year next after the performance of the services, and since the act of 1822, ch. 219, they need not be delivered at any particular period of the year.

APPEAL from *Prince George's* county court.

This was an action of *debt* commenced on the 25th May, 1833, by the appellee against the appellants, and was founded on the bond of *William Hall,* principal, and *Richard T. Hall,* surety, bearing date the 27th May, 1829, acknowledging themselves bound unto the appellant " in the full and just sum of ten thousand pounds current money of the *United States.*" The condition of the bond was as follows :

Whereas the above named *Edward W. Belt,* being sheriff of *Prince George's* county, in the state of *Maryland,* hath deputed, ordained, constituted and appointed the above bound *William Hall,* one of his deputy or under sheriffs of said county, to serve in the said office of deputy or under sheriff within the following lines and bounds, to wit: beginning at, &c. From the date hereof, until he shall be duly and legally discharged by the said *Edward W. Belt,* or until the expiration of the term of office of the said *Edward W. Belt.* That if the above bound *William Hall,* do and shall well and faithfully execute the same office, or appointment of deputy or under sheriff in all things appertaining thereunto, and shall also render to the said *Edward W. Belt,* on the first Monday in each and every month ensuing the date hereof, or oftener if required, a just, true and full account of all fees, public dues, fines, forfeitures and amercements, against all and every person or persons residing, inhabiting or being within the lines and bounds aforesaid, and which shall be placed or offered to be placed in the hands of him, the said *William Hall,* by the said *Edward W.*

*Belt* for collection, and shall also well and truly pay unto the said *Edward W. Belt*, or to his order or assigns, on the first Monday in each and every month as aforesaid, or oftener if required, all and every sum or sums of money by him, the said *William Hall*, received as deputy or under sheriff aforesaid, and shall also well and faithfully execute and return all writs, process and warrants to him delivered, or offered to be delivered, against all and every person or persons residing, inhabiting or being in the lines and bounds aforesaid, and shall also pay and deliver to the said *Edward W. Belt*, or to the person or persons entitled to receive the same, all sum or sums of money, tobacco, goods, chattels or property by him levied, seized or taken, agreeably to the directions of the writ, process or warrant, under which the same shall have been levied, seized or taken, and shall also keep and detain in safe custody or deliver into the public jail of the county aforesaid, all and every person or persons who shall be committed to the custody or care of him, the said *William Hall*, or by him arrested or taken in execution, or who shall be committed for want of bail, without suffering them or any of them to escape or depart from his custody, and shall also pay and satisfy, save harmless, and indemnify the said *Edward W. Belt*, his executors and administrators, from all fines, defaults, amercements, judgments, loss and damage whatsoever, which shall or may be imposed, rendered against, suffered or sustained by the said *Edward W. Belt*, as sheriff of the county aforesaid, for and concerning the neglect, default, not executing, wrongful execution, or detention of any writ, process or warrant, and of and concerning all escapes of all and every person or persons that shall be arrested or taken in execution by the said *William Hall*, and of and concerning the non-payment or non-delivery of any sum or sums of money, tobacco, goods, chattels or property by him levied, seized or taken, and of and concerning the non-payment of all, or any public dues, fines, forfeitures and amercements, by him the said *William Hall* collected and received, or which he ought to have collected and received,

and shall also well and faithfully render to the said *Edward W. Belt,* his heirs, executors and administrators, when thereto required, a just, full, and true account of all matters and things that shall and may be done and executed by him, the said *William Hall,* in virtue of his said office or appointment, and shall in all things well and faithfully execute the said office or appointment of deputy or under sheriff aforesaid, then the above obligation to be void, &c.

The defendants pleaded performance generally by *William Hall,* the deputy, and after an assignment of several breaches by the plaintiff, issue was joined on the rejoinder of the defendants, which alleged that, said *Hall* did deliver and render to him, the said plaintiff, a true and just account of all moneys which he, the said plaintiff, authorized him, the said *William Hall,* to collect and receive, as deputy collector and sheriff of that part of said county, mentioned and described in the writing obligatory aforesaid, and he the said *William Hall,* before the day of the issuing of the said writ in this cause, did pay to him the said plaintiff, all sums of money by him collected and received as aforesaid, and all sums of money which he the said *William Hall,* by law, and his duty as deputy sheriff and collector, was obliged to collect and receive, according to the form and effect of the condition of the writing obligatory aforesaid, to wit, at the county aforesaid.

The jury found as to the issues between the parties aforesaid within joined, that there was due and owing from sundry inhabitants of the said several parts of the county, particularly mentioned and described in the said replication mentioned, the said several sums of, &c. in manner and form as the said plaintiff in his replication aforesaid above hath alleged—and as to the second issue between the parties aforesaid within, likewise joined, the jurors aforesaid, further say, that he the said *William Hall,* was authorized and empowered and entrusted to demand, collect, and receive, and that the said *William Hall* did demand, collect, and receive the aforesaid several sums of, &c. in manner and

form as the said plaintiff in his replication aforesaid above hath alleged, and they do find the sum of $1,945 52 current money, really and justly due to the said plaintiff upon the writing obligatory aforesaid.

The defendants moved in arrest of judgment, and insisted that the verdict is insufficient and erroneous, and that the same verdict may be set aside. This motion the county court overruled.

EXCEPTION.—At the trial of this cause the plaintiff proved to the jury that he had been elected high sheriff of *Prince George's* county, in October, 1827, and that he was duly qualified, and acted as sheriff for the three years immediately succeeding his election. He also proved, that *William Hall*, the principal in the bond on which this suit is brought, was acting as his deputy on the day of the date of his said receipt, in consequence of said appointment, and then offered in evidence to the jury, a paper purporting to be a list of fees which had accrued to him as sheriff on executions in the year 1828, with a receipt thereto attached, admitted to be signed by the said *William Hall* in the words and figures following, to wit: " Received on this 19th day of May, 1830, of *Edward W. Belt*, sheriff of *Prince George's* county, the several accounts of fees corresponding with the aforegoing list of fees, to be by me collected agreeably to law, and paid over to said *Belt*."

Whereupon, the defendants prayed the opinion and direction of the court to the jury, that they were not legally liable as the executors of the surety of said *Wm. Hall*, for fees which had accrued to said plaintiff as sheriff, on executions in 1828, and which had been placed in the hands of the said *Wm. Hall*, a deputy of the plaintiff, in May, 1830, which opinion and direction, the court (*Key and C. Dorsey, A. J's*) refused to give to the jury, but were of opinion, and so directed the jury, that the said list of fees was competent proof to the jury, although they had accrued in 1828, and had been placed in the hands of the said *William Hall* in 1830. To

which opinion and direction of the court the defendants excepted.

The verdict and judgment being for the plaintiff, the defendants appealed to this court.

The cause was argued before ARCHER, DORSEY, and CHAMBERS, Judges.

PRATT, for the appellant, contended:

Upon, the motion in arrest of judgment that, the penalty of the bond being in no known currency, " pounds current money of the United States," and which had not been reduced into any known currency by any form of averment, could not form the basis of a judgment in the money of this state. That any defect in the bond fatal to a recovery might be urged successfully in arrest. The case of *Sprowle vs. Legge*, 8 *Serg. and Low.* 11, establishes that foreign money must be averred to be of some value. Some equivalent in domestic money, and as it relates to Irish currency in an *English* court, is decisive of the question of pleading. The true question is, is the alleged currency of any known value. That averred is just as vague, as if it were one thousand without more specified.

Upon the exception, he contended, that the deputy was only bound for such fees as the sheriff could confer on him the official power to collect. If the act of 1779, ch. 25, sec. 11 and 18, refers to poundage fees of sheriffs, when the deputy received them in May, he had no authority as sheriff to collect them. If the terms, all officers, include the sheriff, he is to be regarded as all other officers, and these by the 11th section, are authorized to send out their fees but once in every year, and that between 1st January and 1st May. The power to execute for fees exists only with reference to the 11th section.

The act of 1788, relates only to the last year of a sheriff, and to fees delivered to him according to law. All officers collecting fees by execution must conform to the 11th section

of the act of 1779, ch. 25. This act was intended for the convenience of the people; and the officers bound to send out all fees intended to be so collected. This it is supposed includes the sheriff. The sheriff in this case did not send out his fees within the year of their accrual, and the defendant as deputy, could not execute for them, neither on property nor on the person : consequently as the deputy was not armed with the power designed by the bond, the security is not responsible for his default. But the sheriff is not within the 11th section. The more correct rule is that it only applies to those who are to deliver fees to the sheriff.

Then as to poundage fees, who is to pay them? and how do they accrue? They are for levying executions, and are to be paid by defendants. They attach on the levy. The act directs his compensation for levying, and that the amount due on judgments shall be marked on back of executions to ascertain fees by. The sheriff has a right to control an execution so far as to collect his fees. If so, did the security intend to stipulate for the performance of more than those duties which, as deputy he could rightfully discharge for the sheriff. On this construction of the contract, there is an end of the case, for the true question is, could the deputy collect those fees by execution. The fees were placed in his hands in 1830. The bond expired in 1830, and the deputy had not time to collect by warrant or suit at law.

The act of 1833, has no application. It merely relates to the plea of limitations. The act of 1836, ch. 73, is a supplement. The exception taken below merely relates to fees due on executions and on this question, the instruction was erroneous.

C. C. MAGRUDER and A. C. MAGRUDER, for the appellees.

The question on the motion in arrest, is whether the bond is a nullity. It is executed by a deputy to his principal sheriff, to perform duties in *Maryland.* Such is the nature of the contract. He is to be compensated in *Maryland*, and it would seem to follow, in the current money of *Maryland.*

This is denied by the appellant, because the language of the penalty is current money of the *United States.* If these words were omitted, the bond is still valid. Why sufficient to say current money, and why from that infer money of this state? Because the contract is to be performed here. This shows the intent to pay here. This authorizes the insertion of necessary, and the rejection of unnecessary words. The covenant must be construed most favourably for the covenantee. 1 *Com. on Con.* 25, 26. *Harper vs. Hampton,* 1 *Har. and John.* 672. *Howard vs. Rogers,* 4 *Har. and John.* 278. *Lyles vs. Lyles, ex'rs,* 6 *Har. and John.* 273. *Laidler vs. State use Hawkins,* 2 *Har. and Gill,* 277. 8 *Serg. and Low.* 11. 1 *Saund. P. & E.* 321. The plaintiff declares for £10,000 current money. There is oyer of the bond and condition. The defendant's plea of performance admits he was bound to pay unless he has performed. It is only by performance he can vacate the bond. Courts are not appointed to vacate instruments, but to make them valid. They make good grammar of bad and transpose language, insert words where necessary—*ut res magis valiat quam pereat.* Extrinsic words not necessary to show intent rejected; hence, the motion in arrest was properly decided.

In the consideration of the exception we contend, that the act of 1779, does not forfeit fees unless collected every year. Sometimes fees were placed in the hands of officers at so short a period before the termination of their offices, that it was impossible to collect them. The act of 1822, ch. 219, repealed a part of 1779, and allowed a further time before the process of execution should be resorted to, and the deputy in this case could have enforced by execution if that was necessary, under the act of 1822. The deputy having that power, remains liable. But it is said, that the provisions of the act of 1779, were not enacted for the benefit of the sheriff, and he could not *so* exact his poundage fees, which are paid on collection of the judgment—but that he has the remedy of holding the defendant's person answerable, or recovering them by action on the case. Practice and usage

gives the sheriff a double remedy for poundage fees, and the sheriff is to proceed for the recovery of his own fees as other officers. The only distinction is, that he has his account in his own hands. They are fees due to an officer and he may proceed under the act.

In this case the plaintiff assigns his breach for non-payment of money due him for fees placed in his deputy's hands. The rejoinder is that the deputy rendered an account and paid the plaintiff. This is the issue. The defence relied on, arises, from the idea, that the fees were collectable the first year and first year only. The universal practice is to send them out from year to year until paid. Such was the law until the act of 1833, ch. 258, put a limitation of time on the general right.

CHAMBERS, Judge, delivered the opinion of the court.

We do not think the appellant has sustained the objections taken to the judgment in this case.

The bond is unskilfully worded; but its import cannot well be mistaken, or its meaning doubted, either by a man of plain sense, or a professional man. The established currency of this state, until within a few years, was in pounds, shillings, and pence, and the penalty of most of our office bonds in the forms set out in the statutes requiring them, will be found expressed in pounds. The contract is between citizens of the state, in reference to a duty to be performed in the state, and we think all the rules of construction, require us to see, and enforce the obvious intention of the parties, and would do so, even if it were not the case of a party claiming against his own words of alleged doubtful import. The motion in arrest of judgment, we therefore think, was rightly disposed of by the court.

The exception raises the question, whether poundage fees due to a sheriff, may after the return of his writ, be collected as other officers' fees, in virtue of the act of 1779, *ch.* 25, and its supplement; a question which we think, must be decided affirmatively, whether we be governed by the letter or the

spirit of the act, or by the uniform practice throughout the state from the passage of the law to this time.

The direction not to send out fees, more than once in each year; whether designed for the necessary security of the sheriff, and to avoid the necessity of his perpetual occupation in distributing small accounts for fees, and collecting their amount, or for the protection of the citizens from the annoying demands continually repeated, of the very small sum in which they are generally due, will not be disobeyed by sanctioning the law declared in this exception. We cannot perceive that either reason will demand that the fees should be sent out, in the year next after the services were performed. The act of 1833, *ch.* 258, confirms what might otherwise have been said without doubt, that the practice in this respect also, has conformed to this construction.

It being no longer necessary, since the act of 1822, *ch.* 119, that the fees should be delivered at any particular period, there can be no reason why the deputy sheriff should not have proceeded to perform his duty, in respect to their collection. If any necessary cause why he could not collect them, could be shewn to the jury, they would under the sanction of the court, have considered its fair and just weight. But in the meantime, the receipt of the deputy for such fees, was competent proof to the jury, and as *prima facie* evidence sufficient in the absence of any countervailing proof, to render the said deputy, or his sureties, or his or their representatives, when sued on his bond, legally liable to the sheriff for the damages sustained by the non-performance of his the deputy's duty.

JUDGMENT AFFIRMED.